# In the United States Court of Federal Claims

No. 99-440C
Filed May 31, 2007
**TO BE PUBLISHED**

| | | |
|---|---|---|
| ATK THIOKOL, INC., | * | Certified Claim, 41 U.S.C. § 605(a), FAR 31.205-11; |
| Plaintiff, | * | Contract Disputes Act, 41 U.S.C. § 601, *et seq.*; |
| v. | * | Jurisdiction; |
| | * | RCFC 15(a), 54(b); |
| THE UNITED STATES, | * | RESTATEMENT (SECOND) OF CONTRACTS § 235(2); |
| Defendant. | * | FAR §§ 4.804-5, 52.216-7. |

**Thomas A. Lemmer,** McKenna, Long and Aldridge LLP, Denver, Colorado, counsel for Plaintiff.

**Robert E. Chandler**, United States Department of Justice, Civil Division, Washington D.C., counsel for Defendant.

**MEMORANDUM OPINION AND ORDER**

**BRADEN, *Judge.***

Before the court is Plaintiff's October 19, 2006 Motion for Leave to File a Second Amended Complaint; Defendant ("the Government")'s January 10, 2007 Motion to Dismiss Plaintiff's First Amended Complaint Or, In The Alternative, To Dismiss Plaintiff's Breach Of Contract Claims, And Request For Determination Of Final Contract Payment Amount And Interest Claim; Plaintiff's April 19, 2007 Motion for Entry of Judgment Under Rule 54(b) on Entitlement; and the Government's April 19, 2007 Motion for Entry of Declaratory Judgment.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY.[1]

On March 10, 1999, a Divisional Administrative Contracting Officer ("DACO") in the United States Defense Logistics Agency's Central Defense Contract Management issued a Notice of Intent to Disallow Costs relating to Plaintiff's Castor IVA-XL B&P Costs & Capitalized Special Tooling ("Notice of Intent"). *ATK I*, 68 Fed. Cl. at 622; Pl. Mot. to Confirm Ex. 4 (Notice of Intent). The Notice of Intent stated that the Government intended to disallow Plaintiff's allocation of $8,149,888 in Research & Development and Production Equipment costs as indirect costs, because "these costs should be charged direct to the Castor IVA-XL program." *ATK I*, 68 Fed. Cl. at 622-23. Therein, the DACO identified four "test contracts" for potential resolution by litigation. *See ATK I*, 68 Fed. Cl. at 622 ("The significant contracts that will receive an allocation of costs, which therefore govern the dispute, are NAS8-38100, PB10E9900N, F42610-94-C0031, and DAA001-95-C0016.").

On May 10, 1999, Plaintiff provided the DACO with a Certified Claim asserting that "the [G]overnment's Notice of Intent to Disallow Costs [was] totally improper" and requesting that the disputed Research & Development and Production Equipment costs be allowed as indirect costs:

> The undersigned, on behalf of Thiokol Propulsion ("Thiokol"), submits, at your request, a *certified claim* and request for a contracting officer's Final Decision pursuant to the Contract Disputes Act ("CDA") on the [G]overnment's claim dated March 10, 1999, whereby the [G]overnment issued a Notice of Intent to Disallow indirect costs in the amount of *$8,149,888*. That amount reflects $3,149,888 of disallowed [Research and Development] costs and $5 million of tooling and equipment costs. . . . Thiokol believes that pursuant to FAR § 31.205-11 and § 31.205-18 . . . Thiokol *is entitled to recover the questioned costs* as allowable indirect costs. Thiokol's right of recovery exists not only under the test NASA contract and the other three contracts upon which the government's Notice of Intent to Disallow is based, *but all contracts performed priced during [Plaintiff]'s fiscal years 1998, 1998T and 1999 and thereafter that include or will include any of the referenced [FAR] clauses*.

---

[1] The facts recited herein previously were discussed in *ATK Thiokol, Inc.* v. *United States*, 68 Fed. Cl. 612 (2005) ("*ATK I*") and *ATK Thiokol, Inc.* v. *United States*, 72 Fed. Cl. 306 (2006) ("*ATK II*"). Additional facts cited herein were derived from: the parties' May 18, 2006 Joint Status Report ("JSR"); Plaintiff's June 5, 2006 Motion for Confirmation of Memorandum Opinion and Order ("Pl. Mot. to Confirm") and exhibits thereto ("Pl. Mot. to Confirm Ex. __"); Plaintiff's October 19, 2006 Motion for Leave to File a Second Amended Complaint ("Pl. Mot. for Leave") and Proposed Second Amended Complaint ("Prop. Sec. Am. Compl."); the Government's January 10, 2007 corrected Opposition ("Gov't Opp.") and attached exhibits ("Gov't Opp. Ex __"); Plaintiff's January 31, 2007 Reply ("Pl. Reply"); and the transcript of the April 12, 2007 Oral Argument ("TR 1-63").

Pl. Mot. to Confirm Ex. 5 at 1-2 (Plaintiff's May 10, 1999 Certified Claim) (emphasis added); *see also ATK I*, 68 Fed. Cl. at 623; *ATK II*, 72 Fed. Cl. at 308.

On May 14, 1999, the DACO issued a "Final Decision to Disallow Costs[:] Castor IVA-XL [Research and Development] Costs & Capitalized Special Tooling" ("Final Decision") of Plaintiff's indirect allocation of $8,149,888 in Research & Development and Production Equipment costs:

> I am issuing this Final Decision to Disallow Costs booked as [Research & Development] costs that have been incurred or are to be incurred in connection with the Castor IVA-XL Research and Development/Production program. *The questioned amounts of* [*R&D*] *incurred are FY 98 $1,017,264, and FY98T, $1,132,624. The* [*R&D*] *estimated amount for CY99 is $1,000,000.* It is my opinion that these costs should be charged direct to the Castor IVA-XL program. It is my position that the related *Special Tooling amount, $5,000,000*, should be charged direct to its original cost objective, the Castor IVA-XL contract. Thiokol Propulsion plans on capitalizing and depreciating these costs starting CY99.

Pl. Mot. to Confirm Ex. 6 at 1 (DACO's May 14, 1999 Final Decision) (emphasis added).

In effect, the Final Decision disallowed all of Plaintiff's indirect allocation of $8,149,888 in Research & Development and Production Equipment costs. *Id.* at 5.

On July 2, 1999, Plaintiff filed a Complaint, pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.*, in the United States Court of Federal Claims challenging the disallowance of the Research & Development and Production Equipment costs. On November 30, 2005, the court issued a Memorandum Opinion and Order granting Plaintiff's Cross-Motion for Summary Judgment on Counts I and II, holding that the DACO's disallowance of $8,149,888 was improper, because that amount was allowable under Cost Accounting Standards ("CAS") 402, 404, 409, 420 and FAR §§ 31.205-11, 31.205-18 as Research & Development and Production Equipment costs. *See ATK I*, 68 Fed. Cl. at 639-45 (citing 48 C.F.R. §§ 9904.402-40, 9904.404-40, 9904.409-40, 9904.420-40, 31.205-11, 31.205-18). The court then ordered the parties to consult, in an effort to determine the amount that the Government owed Plaintiff, including appropriate interest under the CDA, 41 U.S.C. § 611. The parties were unable to reach an agreement, because:

> A legal issue has been identified . . . upon which the parties are unable to agree. Specifically, the government asserts that measurement of [damages] should include consideration of only Contract No. NAS8-38100[,] because it is only this "test contract" upon which the Court maintains jurisdiction under the Contract Disputes Act, 41 U.S.C. § 601, *et seq*. [Plaintiff] believes the [damages] should include consideration of all flexibly priced government contracts, including the "test

> contract," all of which were subject to the government contracting officer's notice of intent to disallow, [Plaintiff]'s certified claim and the contracting officer's final decision.

JSR at 1.

On June 5, 2006, Plaintiff filed a Motion for Confirmation to adjudicate this issue. On July 31, 2006, the court issued a Memorandum Opinion and Order clarifying that the court had jurisdiction over all affected contracts with claims disallowed by the DACO, not just the $730,615 at issue in the "test contract," Contract No. NAS8-38100. *See ATK II*, 72 Fed. Cl. at 313-15. Accordingly, Plaintiff's June 5, 2006 Motion for Confirmation was considered as a Motion for Leave to Amend the Complaint pursuant to Rule 15 of the Rules of the United States Court of Federal Claims ("RCFC"). *Id*. at 315 ("Plaintiff may file an Amended Complaint seeking any additional relief related to the Contracting Officer's May 14, 1999 Final Decision[.]").

On September 15, 2006, the parties filed status reports. On September 18, 2006, Plaintiff filed an Amended Complaint seeking: declaratory relief; monetary damages; and interest for all four contracts subject to the March 10, 1999 Notice of Intent, as well as all other contracts "subject to the to the CAS or FAR cost principles to which the [$8,149,888 in indirect costs disallowed by the Government] were allocable." Am. Compl. ¶ 6, Prayer.

The September 18, 2006 Amended Complaint seeks:

> **PRAYER FOR RELIEF**
>
> WHEREFORE, Thiokol respectfully requests the Court for the following relief.
>
> A. That this Court enter judgment under Count I that the contracting officer's decision that Thiokol must account for the Development Effort costs as direct costs . . . is improper and that Thiokol is entitled to: (1) pursuant to the FAR and CAS, have accounted for these costs as allowable indirect costs under the "test contract," Contract No. NAS8-38100, and all other affected contracts; and *(2) have recovered, through payment or reimbursement under the "test contract" and all other affected contracts, an amount equaling $3,149,888*; and
>
> B. That this Court enter judgment under Count II that the contracting officer's decision that Thiokol must account for the depreciation costs of the equipment as direct costs . . . is improper and that Thiokol is entitled to: (1) pursuant to the FAR and CAS, have accounted for the depreciation costs as allowable indirect costs under

the "test contract," Contract No. NAS8-38100, and all other affected contracts; and *(2) have recovered, through payment or reimbursement pursuant to the terms of the "test contract" and all other affected contracts, an amount equaling $5,000,000*; or

* * *

D. *That this Court award to Thiokol CDA interest* beginning May 10, 1999 and continuing until payment; and

E. That this Court award to Thiokol such other relief as the Court deems proper.

Am. Compl. at Prayer (emphasis added).

On September 18, 2006, the Government filed a Motion for an Extension of Time to File an Answer. On September 19, 2006, the Government's Motion was granted. On September 22, 2006, Plaintiff filed a Motion for a Scheduling Order and a Motion for Reconsideration of the court's September 19, 2006 Order. On September 25, 2006, the court convened a telephone status conference. On September 26, 2006, the court issued a Scheduling Order to establish a schedule for briefing on whether declaratory judgment is the only relief the court can award.

On October 19, 2006, Plaintiff filed a Motion for Leave to File and a Second Amended Complaint responding to the Government's critique that the precise nature of the relief sought by Plaintiff in the Amended Complaint was unclear. *See* Gov't Opp. at 4-5 ("During the [September 25, 2006] status conference to discuss briefing, counsel for the Government pointed out that the nature of the relief sought by ATK remained unclear even after the amendment to its complaint."). The proposed Second Amended Complaint clarified that Plaintiff seeks breach of contract damages, for Research & Development costs of $3,149,888 and Production Equipment costs of $5,000,000 "because of a government failure to pay in accordance with contract terms." *See* Prop. Sec. Am. Compl. at Prayer.

On October 27, 2006, the Government filed a Motion for an Extension of Time to Respond to Plaintiff's October 19, 2006 Motion for Leave. On November 2, 2006, Plaintiff filed a Response. On November 14, 2006, the court convened another telephone status conference to discuss a schedule for briefing on damages. On November 15, 2006, the court entered a Scheduling Order.

On December 22, 2006, the Government filed an Opposition to Plaintiff's October 19, 2006 Motion for Leave to Amend and a Motion to Dismiss Plaintiff's First Amended Complaint Or, In The Alternative, To Dismiss Plaintiff's Breach Of Contract Claims, Request For Determination Of Final Contract Payment Amount And Interest Claim. On that same date, the Government filed a Proposed Schedule for a trial on damages. On January 8, 2007, the Government filed a Motion to File a Corrected Response to Plaintiff's October 19, 2006 Motion for Leave. On January 9, 2007, Plaintiff filed a Motion for Extension of Time to Respond, which the court granted. On January 10, 2007, the court granted the Government's January 8, 2007 Motion for Leave, allowing the

Government to file a Corrected Opposition. On January 22, 2007, Plaintiff filed a Motion for Extension of Time to File a Response, which the court granted on January 23, 2007. On January 31, 2007, Plaintiff filed a Reply to the Government's January 10, 2007 Corrected Response.

On April 12, 2007, the court held an oral argument on Plaintiff's October 19, 2007 Motion for Leave to File a Second Amended Complaint and the Government's January 10, 2007 Motion to Dismiss. On April 19, 2007, at the invitation of the court, Plaintiff filed a Motion for Entry of Judgment Under Rule 54(b) on Entitlement and the Government filed a Motion for Entry of Declaratory Judgment.

## II. DISCUSSION.

### A. Jurisdiction.

In *ATK I*, the court determined that it had jurisdiction, pursuant to the the Tucker Act, 28 U.S.C. § 1491(a)(2), and the CDA, 41 U.S.C. § 609, to adjudicate claims alleged in the July 2, 1999 Complaint, as amended on September 18, 2006. *See ATK I*, 68 Fed. Cl. at 626; *see also* 28 U.S.C. § 1491(a)(2) ("The [United States] Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978[.]"); 41 U.S.C. § 609 (providing that "a contractor may bring an action directly on [a] claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary"). Explicit in the court's decision to grant summary judgment in favor of Plaintiff on Counts I and II was the determination that the court had jurisdiction to award Plaintiff money damages and interest. *See ATK II*, 72 Fed. Cl. at 310 ("On December 15, 2005, the court convened a teleconference with the parties to discuss [the court's ruling in *ATK I*] *and ordered the parties to consult in an effort to measure the amount that the Government owed Plaintiff, including appropriate interest under the Contract Disputes Act*[.]" (emphasis added)). Accordingly, following the court's ruling in *ATK I*, the parties engaged in negotiations. *See* Pl. Mot. to Confirm Ex. 1-3 (correspondence between the Government and Plaintiff discussing the specific quantum due Plaintiff pursuant to the court's ruling in *ATK I*). Thereafter, the parties returned to court, not to dispute the court's authority to award monetary relief, but to adjudicate whether the court's jurisdiction was limited to awarding relief only under the "test contract," Contract No. NAS8-38100, or all of the contracts subject to the DACO's Notice to Disallow Indirect Costs. *See* Pl. Mot. to Confirm at 1; *see also ATK II*, 72 Fed. Cl. at 310 ("The parties essentially agree on how to measure the quantum [of damages]. A legal issue has been identified, however, upon which the parties are unable to agree. Specifically, the government asserts that measurement of [damages] should include consideration of only Contract No. NAS8-38100[.] . . . [Plaintiff] believes [the amount of damages] should include consideration of all flexibly priced government contracts . . . which were subject to the [DACO]'s notice of intent to disallow, [Plaintiff]'s certified claim, and the [DACO]'s final decision." (citing JSR at 1)).

At the request of the parties, in *ATK II*, the court reaffirmed jurisdiction to "award monetary damages under the CDA" for all contracts subject to the DACO's Notice to Disallow Indirect Costs.

*See ATK II*, 72 Fed. Cl. at 312-15 (citations omitted). Nevertheless, the Government continues to contest Plaintiff's entitlement to monetary relief in this case, because "the only complaint in this case for seven years, requested only declaratory relief[.]" Gov't Opp. at 4. The Government further argues:

> The second amended complaint . . . proposes to effect a substantial shift in the scope of, and theory underlying, this case. The proposed second amended complaint adds allegations that the Government breached each of its more that 100 contracts with ATK. . . . In addition, it seeks more than $8 million in "breach of contract damages." . . . Significantly, the proposed second amended complaint represents the first pleading in which ATK has alleged an entitlement to monetary relief in this case or asserted breach of contract as the basis for any of its claims.

*Id*. at 5.

Plaintiff responds that once a court has established jurisdiction over a contract dispute, pursuant to the CDA, "the court's jurisdiction is co-extensive with the operative facts underlying the final decision and does not turn on the particular wording of the claim, final decision, or complaint." Pl. Reply at 3 (citing *Scott Timber Co.* v. *United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). Plaintiff also asserts that once the court has jurisdiction over a claim, it has jurisdiction to provide *complete relief*, "includ[ing] monetary relief . . . and interest[.]" *Id*. at 4 (emphasis added).

The United States Court of Appeals for the Federal Circuit has held that, under the CDA, the court's jurisdiction extends to all claims arising from the same set of operative facts as the claim submitted to the contracting officer. *See Scott Timber*, 333 F.3d at 1365-66 (affirming a ruling by the United States Court of Federal Claims that it had jurisdiction over claims arising from the same operative facts and claim essentially the same relief, even though plaintiff asserted differing legal theories for recovery); *see also M.A. DeAtley Constr., Inc.* v. *United States*, 75 Fed. Cl. 575, 579 (2007) ("Where the contractor has not presented . . . claims to the CO in the exact terms of the complaint, the Federal Circuit instructs that a contractor has sufficiently established subject matter jurisdiction in this Court when . . . claims here 'arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery' when compared with its claim presented to the CO." (quoting *Scott Timber*, 333 F.3d at 1365)).

Under the CDA, an aggrieved contractor must exhaust its administrative remedies by filing a claim with, and receiving a decision from, the contracting officer before it has standing to assert a claim in the United States Court of Federal Claims. *See* 41 U.S.C. § 605(a); *see also England* v. *The Swanson Group*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (holding that "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim[]"). Accordingly, in *Scott Timber*, our appellate court clarified that any claims filed before the United States Court of Federal Claims must be "'based on the claim previously presented to and denied by the contracting officer.'" *Scott Timber*, 333 F.3d at 1365 (quoting *Cerberonics, Inc.* v. *United States*,

13 Cl. Ct. 415, 417 (1987)). Significantly, the United States Court of Appeals for the Federal Circuit emphasized that this requirement "does not require rigid adherence to the exact language of the original administrative CDA claim." *Id.* Accordingly, the CDA's administrative exhaustion requirement requires only that the claim provide the CO with adequate notice of the basis and amount of the claim. *Id.*

In this case, Plaintiff's May 10, 1999 Certified Claim provided notice that Plaintiff sought a determination, and monetary relief, as to all existing contracts with the Government impacted by the DACO's Notice of Intent to disallow the Research & Development and Production Equipment costs. *See ATK II*, 72 Fed. Cl. at 314 ("Plaintiff's Certified Claim . . . seek[s] money, *i.e.*, $8,149,888.00 in R & D and Production Equipment Costs[.]"); Pl. Mot. to Confirm Ex. 5 at 1 (certified claim) ("[Plaintiff] believes that pursuant to FAR § 31.205-11 and § 31.205-18, *incorporated into the reference contracts* through FAR clauses 52.216-7, 52.216-10, 52.216-16, 52.230-2 and 52.230-6, [Plaintiff] is entitled to recover the questioned costs as allowable indirect costs." (emphasis added)). Thus, the gravamen of Plaintiff's May 10, 1999 Certified Claim is that Plaintiff suffered $8,149,888 in damages as a result of the Government's breach of specific contract terms. Accordingly, the claims asserted in Plaintiff's Proposed Second Amended Complaint are identical to those at issue in the May 10, 1999 Certified Claim. *See* Prop. Sec. Am. Compl. ¶¶ 71-74, 87-90, Prayer.

Specifically, with respect to the Research and Development costs, the Proposed Second Amended Complaint alleges:

> The government was obligated to pay or reimburse [Plaintiff] for the Development Effort costs *totaling $3,149,888 under the payment terms in each and every affected contract*.
>
> The government's refusal to pay or reimburse [Plaintiff] the Development Effort Costs, and *the government's resulting failure to pay or reimburse the Development Effort costs, totaling $3,149,888, breached each and every affected contract*.
>
> The government's breach of contract under each and every affected contract caused [Plaintiff] to incur damages of $3,149,888.
>
> *[Plaintiff] is entitled to recover $3,149,888 as breach of contract damages* under all affected contracts.

Prop. Sec. Am. Compl. ¶¶ 71-74 (emphasis added).

Similarly, with respect to the Production Equipment costs, the proposed Second Amended Complaint alleges:

> The government was obligated to pay or reimburse [Plaintiff] for the equipment costs *totaling $5,000,000 under the payment terms in each and every affected contract*.
>
> The government's refusal to pay or reimburse [Plaintiff] equipment costs, and *the resulting non-payment of the equipment costs, totaling $5,000,000, breached each and every affected contract*.
>
> The government's breach of contract under each and every affected contract caused [Plaintiff] to incur damages of $5,000,000.
>
> *[Plaintiff] is entitled to recover $5,000,000 as breach of contract damages* under all affected contracts.

Prop. Sec. Am. Compl. ¶¶ 87-90 (emphasis added).

Plaintiff's May 10, 1999 Certified Claim[2] and the proposed Second Amended Complaint allege the same claims and request the same relief. *Compare* Pl. Mot. to Confirm at Ex. 5 at 1-2, *with* Prop. Sec. Am. Compl. ¶¶ 71-74, 87-90, Prayer; *see also Kasarsky* v. *Merit Sys. Prot. Bd.*, 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("A breach of contract is simply the non-performance of a contractual duty."); RESTATEMENT (SECOND) OF CONTRACTS § 235 (2) ("When performance of a duty under a contract is due any non-performance is a breach.").

Therefore, the court has determined that the breach of contract claims in Plaintiff's Proposed Second Amended Complaint contain the very same factual and legal bases as the May 10, 1999 Certified Claim submitted to the DACO. *See Scott Timber Co.*, 222 F.3d at 1366 (holding that the United States Court of Federal Claims had jurisdiction under the CDA over claims "that are

---

[2] Plaintiff's May 10, 1999 Certified Claim provides:

> [Plaintiff] submits . . . a certified claim and request for a contracting officer's Final Decision pursuant to the Contract Disputes Act ("CDA") on the Government's claims . . . whereby the government issued a Notice of Intent to Disallow indirect costs in the amount of $8,149,888. . . . [Plaintiff] believes that pursuant to FAR § 31.205-11 and § 31.205-18, *incorporated into the reference contracts* through FAR clauses 52.216-7, 52.216-10, 52.216-16, 52.230-2 and 52.230-6, *[Plaintiff] is entitled to recover the questioned costs* as allowable indirect costs.

Pl. Mot. to Confirm Ex. 5 at 1 (emphasis added).

essentially the same as those presented to the CO").[3] Accordingly, the court has determined that it has jurisdiction, pursuant to the CDA, to award monetary relief for the breach of contract claims asserted in Plaintiff's Proposed Second Amended Complaint.

### B. The Court's Resolution Of Plaintiff's Motion For Leave To File Second Amended Complaint.

The Government argues that the court should not allow Plaintiff leave to file a Second Amended Complaint, pursuant to RCFC 15(a),[4] because: (1) the Second Amended Complaint was filed after a period of undue delay; (2) the Government substantially would be prejudiced; (3) any amendment would be futile; and (4) Plaintiff failed to demonstrate that "justice requires" filing an amended complaint in this case. Gov't Opp. at 9-14.

---

[3] Assuming *arguendo* that Plaintiff's breach of contract claims assert a new legal basis for recovery, the court nevertheless would still retain jurisdiction to adjudicate those claims, because they arise out of the same operative facts detailed in the May 10, 1999 Certified Claim but "merely assert a different legal theory" as the basis for recovery. *See Scott Timber*, 222 F.3d at 1365.

[4] RCFC 15(a) provides, in relevant part:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

RCFC 15(a).

Interpreting Federal Rule of Civil Procedure 15(a), on which RCFC 15(a) is modeled, the United States Supreme Court has held that:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a [P]laintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (citation omitted).

### 1. The Government Did Not Establish "Undue Delay."

First, the Government asserts that at this stage of the litigation, Plaintiff must justify the seven-year delay between filing the initial Complaint and filing Plaintiff's Motion for Leave to File a Second Amended Complaint. S*ee* Gov't Opp. at 9-10 ("ATK has failed to offer any explanation in its motion for leave to amend as to why it waited more than seven years to amend. The addition of these claims is not based upon the discovery of new evidence, and ATK has not alleged that its claims recently accrued pursuant to any provision of law or its agreements with the Government." (emphasis in original) (citing *Te-Moak Bands of W. Shosone Indians* v. *United States*, 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) (holding that when a party seeks to amend a complaint after a significant passage of time, the party seeking amendment bears the burden of justifying the delay, by "more than invocation of the concept of [RCFC 15(a)]'s liberality."))).

Plaintiff responds that amendment is appropriate at this juncture for two reasons. First, Plaintiff was invited to file an Amended Complaint in response to the court's July 31, 2006 Memorandum Opinion and Order, determining that the court's jurisdiction was co-extensive with all contracts, *i.e.*, the total $8,149,888 amount disallowed by the DACO, not just the $730,615 at issue in the "test contract." *See ATK II*, 72 Fed. Cl. at 315 ("Plaintiff may file an Amended Complaint seeking any additional relief related to the Contracting Officer's May 14, 1999 Final Decision[.]"). Second, even after the Complaint was amended, the Government continued to assert that the nature of the relief sought by Plaintiff was unclear. *See* Gov't Opp. at 4-5 ("During the [September 25, 2006] status conference to discuss briefing, counsel for the Government pointed out that the nature of the relief sought by ATK remained unclear even after the amendment to its complaint.").

On September 18, 2006, Plaintiff promptly filed an Amended Complaint based on the court's ruling in *ATK II*, however, the Government continues to contest the scope of the court's jurisdiction and authority to award money damages in this case. As a result, during a September 25, 2006 telephone status conference, the court indicated that Plaintiff could further amend the complaint to respond to the Government's insistence that Plaintiff was not entitled to monetary relief. *See* Pl. Mot. for Leave at 1. Because Plaintiff seeks to amend the Complaint in light of the court's jurisdictional ruling in *ATK II* and to satisfy the Government's concern that Plaintiff's September 18, 2006 Amended Complaint did not precisely state the relief requested, the court has determined that any delay in amending the Complaint is justified. Furthermore, the Government has had adequate notice of the factual and legal grounds for Plaintiff's claims, because the claims in the proposed Second Amended Complaint involve the same factual and legal bases as the May 10, 1999 Certified Claim submitted to the DACO and the July 2, 1999 Complaint. *See ATK II*, 72 Fed. Cl. at 314 ("Plaintiff's Certified Claim also . . . seek[s] money, *i.e.*, $8,149,888.00 in R & D and Production Equipment Costs[.]"); *see also* Pl. Mot. to Confirm Ex. 5 at 1 ("[Plaintiff] believes that pursuant to FAR § 31.205-11 and § 31.205-18, incorporated into the reference contracts through FAR clauses 52.216-7, 52.216-10, 52.216-16, 52.230-2 and 52.230-6, [Plaintiff] is entitled to recover the questioned costs as allowable indirect costs."); Prop. Sec. Am. Compl. ¶¶ 71-74, 87-90, Prayer. Accordingly, under the circumstances, Plaintiff has justified the delay for amending the Complaint.

**2. The Government Did Not Establish "Prejudice."**

The Government also asserts that it will be substantially prejudiced if Plaintiff is allowed to file a Second Amended Complaint. *See* Gov't Opp. at 10-11 ("ATK's proposed amendments represent significant changes in the type of relief sought, the overall amount claimed and the theory upon which it has asserted its claims. To allow ATK to assert these claims seven years into the life of the this litigation would be substantially prejudicial to the Government."). In support, the Government claims that if it had known that Plaintiff was seeking monetary relief and interest, different strategic litigation decisions would have been made. *Id.* at 11 (The "shift in [Plaintiff]'s theory of the case would require substantial additional preparation upon the part of the Government, including the review of over 100 contracts, additional discovery, the hiring and preparation of witnesses and, eventually, trial preparation."). The Government relies on *Wolf* v. *Reliance Standard Like Ins. Co.*, 71 F.3d 444 (1st Cir. 1995), for the proposition that amendment should be denied where "it is proposed late enough [in the litigation] so that the opponent would be required to engage in significant new preparation." *See* Gov't Opp. at 11.

Plaintiff responds that the "[G]overnment's assertions of prejudice . . . are legally insufficient[,] because no new claim is involved, establishing both actual and constructive notice of ATK's claim from the very first day of this dispute." *See* Pl. Reply at 12. The Government has been on notice since May 10, 1999, the date the Certified Claim was filed with the DACO, that Plaintiff sought monetary relief in the amount of $8,149,888. *See ATK II*, 72 Fed. Cl. at 314. Plaintiff's May 10, 1999 Certified Claim provided the Government with notice that Plaintiff's "right of recovery exists not only under the test NASA contract and the other three contracts upon which the government's Notice of Intent to Disallow is based, *but all contracts performed priced during [Plaintiff]'s fiscal years 1998, 1998T and 1999 and thereafter that include or will include any of the referenced [FAR] clauses*." Pl. Mot. to Confirm Ex. 5 at 1-2 (emphasis added). Unlike the defendant in *Wolf*, who sought substantially to change the theory of the case one week before trial, *see Wolf*, 71 F.3d at 450, in this case, the contract claims asserted by Plaintiff's Proposed Second Amended Complaint do not assert any new claims that substantially change the legal theory of this case. Instead, the contract claims in Plaintiff's Proposed Second Amended Complaint essentially are identical to those asserted in Plaintiff's May 10, 1999 Certified Claim. Therefore, assuming strategic decisions were made by the Government based on a belief that Plaintiff was not entitled to monetary relief in this case, they were ill-considered. *See ATK II*, 72 Fed. Cl. at 314 (determining that Plaintiff's May 10, 1999 Certified Claim sought payment, as a matter of right, of a sum certain of $8,149,888).

In the alternative, the Government argues that Plaintiff failed to demonstrate that justice requires further amendment. *See* Gov't Opp. at 14. The Government, however, failed to acknowledge that the amendment was filed at the invitation of the court, in an attempt to satisfy the Government's concern that the Amended Complaint arguably failed to state the specific nature of the requested relief. *See ATK II*, 72 Fed. Cl. at 315 ("Plaintiff may file an Amended Complaint seeking any additional relief related to the Contracting Officer's May 14, 1999 Final Decision[.]"); Gov't Opp. at 4-5 ("During the [September 25, 2006] status conference to discuss briefing, counsel for the Government pointed out that the nature of the relief sought by ATK remained unclear even

after the amendment to its complaint."). Because Plaintiff's proposed Second Amended Complaint was filed to respond to the Government's concern, the court has determined that a Second Amended Complaint serves the interest of justice. Furthermore, the Government's argument here appears to be an effort to avoid the impact of the court's liability determination. *See ATK I*, 68 Fed. Cl. at 645 (holding that the DACO's May 14, 1999 Final Decision to Disallow violated the terms of the affected contracts under the relevant CAS and FAR provisions). Certainly, if the Government had prevailed during the liability phase of this litigation, any subsequent effort by Plaintiff to circumvent that ruling by filing new claims based on contracts, other than the four specifically mentioned in the DACO's May 14, 1999 Final Decision, would be challenged under the doctrine of issue preclusion. *See Simmons* v. *Small Business Admin.*, 475 F.3d 1372, 1374 (Fed. Cir. 2007) ("[T]he doctrine of issue preclusion bars litigation of an issue if an identical issue was actually litigated and necessarily decided in a prior case where the interests of the party to be precluded were fully represented."); *see also In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) ("The underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." (citation omitted)). Plaintiff's decision to invoke the court's jurisdiction to review the DACO's May 14, 1999 Final Decision, pursuant to the CDA, requested relief with respect to all of Plaintiff's affected contracts. The Government was on notice of the scope of Plaintiff's claim and the interests of justice are served by well-established principles of preclusion.

### 3. The Government Did Not Establish "Futility."

Third, the Government asserts that the court should not grant Plaintiff leave to file a Second Amended Complaint, because Plaintiff's Proposed Second Amended Complaint fails to satisfy the pleading requirements of RCFC 9(h)(3).[5] *See* Gov't Opp. at 15. Here, the Government contends that the Proposed Second Amended Complaint specifically identifies four contracts by number and obliquely refers to "other contracts subject to the [CAS and FAR] cost principles . . . to which these costs were allocable[.]" *Id.* (internal quotations omitted). Accordingly, the Government argues that Plaintiff has not pled the substance of those portions of the contracts on which it relies and fails to annex the contracts in question to the Proposed Second Amended Complaint, as required by RCFC 9(h)(3). *Id.*

---

[5] The RCFC 9(h)(3) provides:

> If the claim is founded upon a contract . . . with the United States, [it must include] a description of the contract . . . sufficient to describe it. In addition, the plaintiff shall plead the substance of those portions of the contract . . . on which the plaintiff relies or shall annex to the complaint a copy of the contract . . . indicating the provisions thereof on which the plaintiff relies.

RCFC 9(h)(3).

The court has determined that RCFC 9(h)(3) is not relevant in this case, because Plaintiff's claims are not "founded upon a contract . . . with the Government." *See* RCFC 9(h)(3). Plaintiff brought suit under the Contract Disputes Act, 41 U.S.C § 601, *et seq.*, requesting the court's review of the DACO's May 14, 1999 Final Decision. *See* Prop. Sec. Am. Compl. ¶¶ 3, 7, 8, 10. Therefore, Plaintiff's claim is not founded upon a contract, but instead is based on the DACO's Final Decision. Accordingly, RCFC 9(h)(3) is not applicable. *See Info. Sys. & Networks Corp.* v. *United States*, 64 Fed. Cl. 599, 603 (2005) ("[P]laintiff has invoked this court's jurisdiction to review a final decision of a contracting officer under the CDA, its failure to specifically identify contracts or contract terms in its complaint is not fatal, because its claim is not founded upon a contract, but instead upon an agency action that related to its contracts."). Since Plaintiff complied with RCFC 15(a) by pleading the relevant portions of the May 10, 1999 Certified Claim and the DACO's May 14, 1999 Final Decision, the Government has not established futility. *See* RCFC 9(h)(1) ("The complaint shall include: Any action on the claim taken by . . . any department or agency of the United States[.]"); *see also* Prop. Sec. Am. Compl. ¶¶ 7-10 (discussing the submission of the May 10, 1999 Certified Claim and the DACO's May 14, 1999 Final Decision).

* * *

For these reasons, the court has determined that the Government's objections do not outweigh RCFC's requirement that leave "shall be freely given when justice so requires[.]" RCFC 15(a); *see also Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."). Accordingly, Plaintiff's October 19, 2006 Motion for Leave to File a Second Amended Complaint is granted, and the Government's January 10, 2007 Motion to Dismiss Plaintiff's First Amended Complaint is denied, as moot.

### C. The Court's Resolution Of Plaintiff's Entitlement To Money Damages And Interest.

#### 1. The Court Is Authorized To Award Money Damages In This Case, Pursuant To The Contract Disputes Act, 41 U.S.C. § 601, *et seq.*

Because Plaintiff has satisfied CDA's jurisdictional prerequisites, the court has jurisdiction to award Plaintiff money damages in this case. *See Swanson Group, Inc.*, 353 F.3d at 1379 (discussing the jurisdictional prerequisites of the CDA); *see also Scott Timber*, 333 F.3d at 1365-66 (holding that the United States Court of Federal Claims has jurisdiction over claims that differ from those presented to the CO so long as the claims before the court arise from the same operative facts and claim essentially the same relief, even though plaintiff asserted differing legal theories for recovery).

### 2. An Award of Money Damages In This Case Is Not Prohibited By Federal Acquisition Regulations §§ 52.216-7(d), (e).

The Government argues that FAR §§ 52.216-7(d), (h)[6] prohibit the court from awarding

---

[6] FAR § 52.216-7(d) provides:

(d) Final indirect cost rates.

(1) Final annual indirect cost rates and the appropriate bases shall be established in accordance with subpart 42.7 of the Federal Acquisition Regulation (FAR) in effect for the period covered by the indirect cost rate proposal.

(2)(i) The Contractor shall submit an adequate final indirect cost rate proposal to the Contracting Officer (or cognizant Federal agency official) and auditor within the 6-month period following the expiration of each of its fiscal years. Reasonable extensions, for exceptional circumstances only, may be requested in writing by the Contractor and granted in writing by the Contracting Officer. The Contractor shall support its proposal with adequate supporting data.

(ii) The proposed rates shall be based on the Contractor's actual cost experience for that period. The appropriate Government representative and the Contractor shall establish the final indirect cost rates as promptly as practical after receipt of the Contractor's proposal.

(3) The Contractor and the appropriate Government representative shall execute a written understanding setting forth the final indirect cost rates. The understanding shall specify (i) the agreed-upon final annual indirect cost rates, (ii) the bases to which the rates apply, (iii) the periods for which the rates apply, (iv) any specific indirect cost items treated as direct costs in the settlement, and (v) the affected contract and/or subcontract, identifying any with advance agreements or special terms and the applicable rates. The understanding shall not change any monetary ceiling, contract obligation, or specific cost allowance or disallowance provided for in this contract. The understanding is incorporated into this contract upon execution.

(4) Failure by the parties to agree on a final annual indirect cost rate shall be a dispute within the meaning of the Disputes clause.

(5) Within 120 days (or longer period if approved in writing by the Contracting Officer) after settlement of the final annual indirect cost rates for all years of a physically complete contract, the Contractor shall submit a completion invoice or voucher to reflect the settled amounts and rates.

(6)(i) If the Contractor fails to submit a completion invoice or voucher within the time specified in paragraph (d)(5) of this clause, the Contracting Officer may--

(A) Determine the amounts due to the Contractor under the contract; and

(B) Record this determination in a unilateral modification to the contract.

(ii) This determination constitutes the final decision of the Contracting Officer in accordance with the Disputes clause.

48 C.F.R. § 52.216-7.

FAR § 52.216-7(h) provides:

(h) Final payment.

(1) Upon approval of a completion invoice or voucher submitted by the Contractor in accordance with paragraph (d)(5) of this clause, and upon the Contractor's compliance with all terms of this contract, the Government shall promptly pay any balance of allowable costs and that part of the fee (if any) not previously paid.

(2) The Contractor shall pay to the Government any refunds, rebates, credits, or other amounts (including interest, if any) accruing to or received by the Contractor or any assignee under this contract, to the extent that those amounts are properly allocable to costs for which the Contractor has been reimbursed by the Government. Reasonable expenses incurred by the Contractor for securing refunds, rebates, credits, or other amounts shall be allowable costs if approved by the Contracting Officer. Before final payment under this contract, the Contractor and each assignee whose assignment is in effect at the time of final payment shall execute and deliver--

(i) An assignment to the Government, in form and substance satisfactory to the Contracting Officer, of refunds, rebates, credits, or other amounts (including interest, if any) properly allocable to costs for which the Contractor has been reimbursed by the Government under this contract; and

(ii) A release discharging the Government, its officers, agents, and employees from all liabilities, obligations, and claims arising out of or under this contract, except--

(A) Specified claims stated in exact amounts, or in estimated amounts when the exact amounts are not known;

Plaintiff money damages in this case, because these regulations set forth the process under which a final indirect cost rate is determined to "close out" a particular Government contract. *See* Gov't Opp. at 17-18 (citing 48 C.F.R. §§ 52.216(d), (h)). Therefore, if monetary damages are awarded in this case, the Government argues that "[i]mplicit in any such award would be a determination about the final indirect cost rates and final payment for each of [Plaintiff's] contracts." *Id.* at 18.

The Government returned to this argument at several junctures during oral argument:

GOVERNMENT COUNSEL: The FAR commits to the discretion of the contracting officer or commits to a negotiation between the contracting officer and the contractor numerous decisions that are required to be made in order to decide how much is actually paid out under those contracts. The allocation among those contracts matters. . . . [I]t's not as though if ATK were to take an $8 million allocation to its G&A pool that that would put $8 million in its pocket. What happens is the the money goes into the G&A pool, and then it gets spread out among its numerous contracts based on the procedures set out in the FAR.

* * *

First, some of that money that's allocated from the G&A pool gets allocated to contracts where the costs don't flow through to the contractor. It gets allocated to their

---

(B) Claims (including reasonable incidental expenses) based upon liabilities of the Contractor to third parties arising out of the performance of this contract; *provided*, that the claims are not known to the Contractor on the date of the execution of the release, and that the Contractor gives notice of the claims in writing to the Contracting Officer within 6 years following the release date or notice of final payment date, whichever is earlier; and

(C) Claims for reimbursement of costs, including reasonable incidental expenses, incurred by the Contractor under the patent clauses of this contract, excluding, however, any expenses arising from the Contractor's indemnification of the Government against patent liability.

48 C.F.R. § 52.216-7 (emphasis in original).

commercial contracts. It gets allocated to their fixed price government contracts. That money doesn't actually flow through to the contractor.

With respect to the flexibly priced contracts, many of those contracts contain ceilings above which the contractor cannot recover its costs, so if the allocation were to occur in such a way . . . that would cause the costs to bump up against that ceiling . . . those excess costs would not be recoverable by the contractor. In others of those contracts there are incentive provisions . . . where the contractor is paid a bonus if it keeps its costs below a certain level, so again depending on the allocation among those contracts some of those contracts, the costs allocated to some of those contracts will exceed the incentive threshold, and the contractor would no longer be eligible for its incentive bonus.

* * *

GOVERNMENT COUNSEL: [T]here is this entire machinery that is set up to handle the way money flows through ATK's numerous contracts, and the appropriate thing is to allow that machinery to operate the way it does on a day-to-day basis because essentially what ATK is asking the court to do is to get involved in the administration of over 100 contracts. . . . The other part of this that the Court really can't decide, in order to make the allocation from the G&A pool you have to know what comprises the G&A pool, what costs go into the G&A pool. There are . . . certain cost components, where that's an open issue as to whether they can be allocated to the G&A pool. There are some cost components that are the subject of other litigation. . . . There are other cost components that remain to be negotiated or their allocation remains to be negotiated between the contractor and the

> government, and those . . . [will] get resolved through the negotiation process or they'll be claims similar to this one where ATK goes to Court and asks the Court to make a determination with respect to whether those are allocable. The long and short of it is . . . the Court can't reach the conclusion that ATK is asking without necessarily deciding matters that it simply can't decide.

TR 7-11.

In the alternative, the Government argues that money damages are "unnecessary to resolve the issue raised in this case and contrary to the FAR" and that the consequence of such an award would be that the court would have to resolve numerous unrelated disputes related to "closing out" Plaintiff's contracts with the Government, over which the court does not have jurisdiction. *See* Gov't Opp. at 19-20.

Plaintiff responds that the court is not being asked to "close out" any contracts, pursuant to FAR §§ 52.216-7 (d), (h). *See* Pl. Reply at 17-18. Instead, any award of monetary relief, in this

case, is governed by FAR §§ 52.216-7 (a), (e),[7] as these provisions govern any interim

---

[7] FAR § 52.216-7(a) provides:

(a) Invoicing.

(1) The Government will make payments to the Contractor when requested as work progresses, but (except for small business concerns) not more often than once every 2 weeks, in amounts determined to be allowable by the Contracting Officer in accordance with Federal Acquisition Regulation (FAR) subpart 31.2 in effect on the date of this contract and the terms of this contract. The Contractor may submit to an authorized representative of the Contracting Officer, in such form and reasonable detail as the representative may require, an invoice or voucher supported by a statement of the claimed allowable cost for performing this contract.

(2) Contract financing payments are not subject to the interest penalty provisions of the Prompt Payment Act. Interim payments made prior to the final payment under the contract are contract financing payments, except interim payments if this contract contains Alternate I to the clause at 52.232-25.

(3) The designated payment office will make interim payments for contract financing on the ____ [Contracting Officer insert day as prescribed by agency head; if not prescribed, insert "30th"] day after the designated billing office receives a proper payment request.

In the event that the Government requires an audit or other review of a specific payment request to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the specified due date.

48 C.F.R. § 52.216-7(a).

FAR § 52.216-7(e) provides:

e) Billing rates. Until final annual indirect cost rates are established for any period, the Government shall reimburse the Contractor at billing rates established by the Contracting Officer or by an authorized representative (the cognizant auditor), subject to adjustment when the final rates are established. These billing rates--

(1) Shall be the anticipated final rates; and

(2) May be prospectively or retroactively revised by mutual agreement, at either party's request, to prevent substantial overpayment or underpayment.

reimbursement of costs to contractors. *Id*. (citing 48 C.F.R. §§ 52.216-7(a), (e)). Therefore, any monetary relief awarded by the court would be treated only as "an interim payment subject to future reconciliation upon contract closeout[.]" *Id*.

As Plaintiff's counsel explained during oral argument:

PLAINTIFF'S COUNSEL: [ATK]'s contracts contain contract clauses that permit what are called interim billings of indirect cost rates, and interim simply means that indirect cost rates are not made final for years.

* * *

You go through a stream of interim payments over the years, and then when you finally . . . close out that contract the government says . . . we've determined the final rates. Here's what we've paid you to this point [in interim payments]. What true-up needs to be done? If there's money owed to the contractor it's paid. If the contractor is overpaid as of that point the contractor pays back money. . . . This case was triggered by the negotiation of interim rates where the [D]ACO said it will not pay these indirect costs related to the IR&D and related to the capital dollars

---

(f) Quick-closeout procedures. Quick-closeout procedures are applicable when the conditions in FAR 42.708(a) are satisfied.

(g) Audit. At any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited. Any payment may be

(1) reduced by amounts found by the Contracting Officer not to constitute allowable costs or

(2) adjusted for prior overpayments or underpayments.

48 C.F.R. § 52.216-7(e).

> because I think they are unallowable. . . . The damages that come out of that are the amounts that should have been paid[.]

TR 28-31.

The premise of the Government's argument is that by awarding money damages the court necessarily must make other determinations regarding final indirect cost rates and final payment amounts under all of Plaintiff's contracts in order to "close out" those contracts. *See* Gov't Opp. at 18; *see also* TR 6-11. The Government, however, never explains why the award of money damages interferes with the DACO's "close out" authority.

The contracts at issue between the parties remain open. *See* Gov't Opp. Ex. 1 (correspondence between Plaintiff and the DACO evidencing that Plaintiff has not agreed to the DACO's proposal to "roll forward" litigation costs in order to close out Plaintiff's contracts for FY 1998, FY1998T, and CY1999); *see also* TR 15 (Government counsel confirming that "substantially all" of Plaintiff's affected contracts remain open pending resolution of this case); *see also* 48 C.F.R. § 4.804-5 (FAR provision detailing the procedures for closing out contract files). Therefore, any final indirect cost rates and final payments due under these contracts will be resolved in the normal course of business by the DACO. *See* Gov't Opp. Ex. 2 ¶ 10 (DCAA auditor confirming that: "In order to determine the final indirect cost rates for [Plaintiff]'s open contracts with the United States for fiscal years 1998 through 2006, *a number of issues in addition to the issue that is the subject of this litigation must be resolved* in each of the relevant fiscal years for the various contracts." (emphasis added)); *see also* TR 10-11. When all costs are settled, the affected contracts then will be "closed out," pursuant to FAR § 4.804-5. *See* 48 C.F.R. § 4.804-5(a)(10), (12), (14), (15) (providing that, in order to "close out" a contract, the contracting officer and the contractor must: settle prior year indirect cost rates; complete a contract audit; review the contractor's final invoice; and, if necessary, de-obligate any excess funds over the course of the contract).

The consequence of an award of monetary damages in this case is only that the award will be included in the G&A pool applicable to the affected contracts. The court is not making, and does not need to make, any additional determinations about what other costs appropriately may or may not be included in the G&A pool or what final payments are due, if any. To the extent that the court's award implicates cost ceilings, incentive provisions, or other clauses of particular contracts, the DACO, not the court, will make any necessary interim adjustments. *See e.g.,* 48 C.F.R. § 52.216-7(e)(2) ("[Interim billing rates] [m]ay be prospectively or retroactively revised by mutual agreement, at either party's request, to prevent substantial overpayment or underpayment."). Ultimately a final indirect cost rate and the final amount due under each contract will be established by the DACO, reconciling any payments that have been paid out on an interim basis, including any damages awarded by the court. S*ee* 48 C.F.R. § 52.216-7(d), (h) (procedures for establishing final indirect billing rates and determining final payment); 48 C.F.R. § 4.804-5(a) (stating that contract closeout procedures include: settling "[a]ll interim or disallowed costs," as well as "[p]rior year indirect cost rates" and de-obligating any excess funds that may have been paid out over the term of the contract). Accordingly, awarding Plaintiff monetary damages in this case does not require the

court to resolve issues outside of its jurisdiction, nor conflict with FAR §§ 4.804-5(a), 52.216-6(d), (h).

### 3. The Court Is Authorized To Award Interest In This Case, Pursuant To 41 U.S.C. § 611.

It is well established that "'interest cannot be recovered in a suit against the [G]overnment in the absence of an express waiver of sovereign immunity from an award of interest.'" *Richlin Sec. Serv. Co.* v. *Chertoff*, 437 F.3d 1296, 1299 (Fed. Cir. 2006) (quoting *Library of Congress* v. *Shaw*, 478 U.S. 310, 311 (1986) (citations omitted)). The CDA, 41 U.S.C. § 611, however, provides an explicit waiver of sovereign immunity for such interest. ("Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof.").

Nevertheless, the Government insists that, because Plaintiff is not entitled to assert any claims for monetary damages, "it is not entitled to interest pursuant to the Contract Disputes Act." *See* Gov't Opp. at 20-21 (citing *Raytheon Co.* v. *United States*, 305 F.3d 1354, 1365 (Fed. Cir. 2002) ("holding appellant not entitled to [CDA] interest upon price adjustment, because board decision did not establish amount appellant was to be paid")). In *Raytheon*, the Armed Services Board of Contracting Appeals ("Board") refused to award interest on certain costs that were claimed by the contractor, but not incurred at the time the contract was terminated. *See Raytheon*, 305 F.3d at 1357. In affirming the Board's decision not to award the contractor interest on those costs, the United States Court of Appeals for the Federal Circuit stated that "we have never held that [41 U.S.C.] section 611 permits interest to accrue on costs that, because of the termination of the contract, were never actually incurred by the contractor." *Id*. at 1365. Therefore, "Raytheon will not be paid [the Board-determined costs]; instead, that number will establish how much money, if any, Raytheon is due . . . pursuant to the contract's termination for convenience clause." *Id*. Any amount found due under the termination clause "will be subject to the interest provision of section 611." *Id*.

The Government's reliance on *Raytheon* is misplaced. In contrast to *Raytheon*, where a contractor sought interest on costs that never were incurred, Plaintiff in this case incurred the costs at issue, because of the Government's failure properly to allocate those costs, pursuant to the terms of the contracts. *See ATK II*, 72 Fed. Cl. at 307 ("From 1990 through 1999, Plaintiff incurred $8,149,888.00 in costs to develop the Castor® IVA-XL motor for the commercial market: $3,149,888.00 for R&D and $5,000,000.00 for Production Equipment."). Because Plaintiff is due money damages for expenses already incurred, Plaintiff is also entitled to interest thereunder, pursuant to 41 U.S.C. § 611.

## D. The Court's Resolution Of The Government's Motion To Dismiss Plaintiff's Breach Of Contract Claims, And Request For Determination Of Final Contract Payment Amount And Interest Claim.

For the reasons discussed herein, the court has determined that it has authority to award Plaintiff damages for the breach of contract claims asserted in Plaintiff's Second Amended

Complaint, because Plaintiff has complied with the CDA's jurisdictional prerequisites. *See* 41 U.S.C. § 601*, et seq*.; *see also Swanson Group, Inc.*, 353 F.3d at 1379 (discussing the jurisdictional prerequisites of the CDA); *Scott Timber*, 333 F.3d at 1365-66 (holding that the United States Court of Federal Claims has jurisdiction over claims that differ from those presented to the CO so long as the claims before the court arise from the same operative facts and claim essentially the same relief, even though plaintiff asserted differing legal theories for recovery). In addition, the court has determined that it has authority to award Plaintiff interest, pursuant to 41 U.S.C. § 611. Accordingly, the Government's January 10, 2007 Motion To Dismiss Plaintiff's Breach Of Contract Claims, Request For Determination Of Final Contract Payment Amount, And Interest Claim is, denied.

### E. The Court's Resolution Of The Government's Motion For Entry Of Declaratory Judgment.

For the reasons discussed herein, the court has determined that Plaintiff's remedies are not limited to declaratory judgment and that the court has authority to award Plaintiff monetary relief. Accordingly, the Government's April 19, 2007 Motion for Entry of Declaratory Judgment is denied.

### F. The Court's Resolution Of Plaintiff's Motion For Entry Of Judgment, Pursuant To RCFC 54(b).[8]

The court determined that Plaintiff is entitled to judgment that the Research & Development and Production Equipment costs properly are accountable as allocable indirect costs, under the CAS and FAR. *See ATK I*, 68 Fed. Cl. at 645 (holding that the DACO's disallowance of $8,149,888 was improper, because that amount was allowable under the applicable CAS and FAR regulations as Research & Development and Production Equipment Costs). The court also has determined that Plaintiff is entitled to monetary relief for all contracts, subject to the DACO's disallowance for the entirety of the disallowed costs. *See ATK II*, 72 Fed. Cl. at 313-15 (holding that the court had jurisdiction over the total $8,149,888 amount disallowed by the DACO, not just the $730,615 at issue in the "test contract"). In addition, for the reasons previously discussed, the court has determined that Plaintiff is entitled to interest on all disallowed costs from the date that the Government failed to pay, pursuant to 41 U.S.C. § 611. Accordingly, Plaintiff's April 19, 2007 Motion for Entry of Judgment, pursuant to RCFC 54(b), is granted.

---

[8] RCFC 54(b) provides:

> When more than one claim is presented in an action, whether as a claim, counterclaim, or third-party claim, . . . the court may direct the entry of final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

RCFC 54(b).

## III. CONCLUSION.

For these reasons, the Clerk of the United States Court of Federal Claims will enter an Order that:

Plaintiff's October 19, 2006 Motion for Leave to File a Second Amended Complaint is granted;

The Government's January 10, 2007 Motion to Dismiss Plaintiff's First Amended Complaint is denied, as moot;

The Government's January 10, 2007 Motion To Dismiss Plaintiff's Breach Of Contract Claims, Request For Determination Of Final Contract Payment Amount, And Interest Claim is denied;

The Government's April 19, 2007 Motion for Entry of Declaratory Judgment is denied; and

There being no just reason for delay, Plaintiff's April 19, 2007 Motion for Entry of Judgment, pursuant to RCFC 54(b) on Entitlement is granted.

The court will convene a telephone status conference on June 11, 2007 at 3 P.M. E.T. to discuss whether any further proceedings are necessary before a final judgment can be entered.

**IT IS SO ORDERED**.

/s Susan Braden
**SUSAN G. BRADEN**
**Judge**